[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action proceeded on the complaint filed on CT Page 2591 November 1, 1990, by Cherylann T. Donovan (hereinafter plaintiff/wife) requesting a dissolution of the marriage, custody and support of the minor children, alimony and other relief against the defendant William P. Donovan (hereinafter defendant/husband). The trial to the Court was had in Norwich on March 13, 1992.
Both parties were present in court and were represented by counsel.
By stipulation an oral amendment was allowed showing that the marriage took place on February 14, 1978.
Both the plaintiff and the defendant testified. In addition, the defendant called Miss Kathleen Wilts and the plaintiff called Mr. John Rutchick and the family relations officer Mark R. Patterson.
Several exhibits were introduced into evidence. Both parties filed the necessary financial affidavits, child support guidelines worksheet, custody affidavit and Department of Health Services form. In addition, the defendant filed a document dated March 13, 1992 in the nature of claims for relief and the plaintiff submitted Proposed Orders under the same date. Among the exhibits introduced was Plaintiff's Exhibit A, a Family Services Unit report concerning custody and visitation with respect to the two minor children of the marriage: Todd W. Donovan born August 12, 1978; and Daniel P. Donovan born August 12, 1980.
The Court finds from the evidence presented that the parties have resided continuously in this state for at least twelve months next preceding the date of the complaint. The Court further finds that the marriage of the parties has broken down irretrievably. A decree of dissolution is granted dissolving the marriage of the parties.
Also in this case, based upon the evidence, the Court finds that the custody, visitation and support of the minor children is in actual controversy but that immediate action is necessary in the best interests of the children prior to the appointment of counsel because of the long pendency of the matter and the family strife that has been present during the pendency of the case and the Court's perception that an immediate resolution will reduce the stress on the children and thus be in the best interests of the CT Page 2592 children. For that reason, the Court will proceed with the decision in the matter, but nevertheless, appoint a counsel for the minor children pursuant to the provisions of Section 46b-54 of the General Statutes with the duties set forth in that statute. Attorney Ralph Bergman of Norwich is appointed for that purpose. The defendant is ordered to pay the necessary and reasonable expenses of the attorney for the children within thirty days of a statement for the same. Both parties are ordered to cooperate in interviews with the said attorney and between the children and the attorney. The plaintiff is also ordered to provide the attorney with a copy of the complaint and a copy of the Family Services Unit report filed January 22, 1992 (Plaintiff's Exhibit A).
In connection with the claims of relief, the Court is required to give consideration to the factors set forth in Connecticut General Statutes Sections 46b-81 and 46b-82.
The Court is also required to take into consideration the factors set forth in Sections 46b-56 and46b-84 of the General Statutes concerning the minor children.
The parties testified at some length about their difficulties during their marriage with each party claiming the other caused the breakdown of the marriage. An unusual amount of animosity was found by the Court to exist between the parties even after a prolonged separation marked in this case by an inability to communicate. The plaintiff accused the defendant of physical violence against her. The defendant accused the plaintiff of being unfaithful to him during the marriage. Nevertheless, Mark Patterson, the Family Relations counselor who conducted the Family Division custody study (Plaintiff's Exhibit A) during his testimony in court, indicated that he found both parties to be singularly each competent parents.
With regard to the causes for the dissolution of the marriage, the Court finds that both parties are equally responsible for the breakdown of the marriage arising out of their inability to communicate and resolve their differences in methods less destructive of the family unit.
Both parties have been previously married and those marriages resulted in dissolutions prior to the subject marriage. The parties had separated several times prior to the final separation which precipitated the pending dissolution action.
The plaintiff was born July 17, 1957. The defendant's date of birth is January 12, 1943. Neither party CT Page 2593 claimed that their health is a factor in connection with the dissolution.
The plaintiff's education consists of a high school graduate equivalency diploma which she received in 1991, having dropped out of high school in the tenth grade in 1972. The plaintiff is presently employed as a children's librarian at the St. Joseph's parochial school in New London, Connecticut. Also during the marriage of the parties, the plaintiff was a licensed day care operator at the residence of the parties where she admits to having earned as much as $200 per week from that source back in 1981. Prior to the separation of the parties, the plaintiff was not otherwise substantially employed out of the house, it having been the understanding of the parties that her role would be as a homemaker for the defendant and their two children. The plaintiff was also custodian of a minor child from a prior marriage who recently attained the age of eighteen.
The defendant has attended college. His primary employment at this time is as a teacher and athletic director at the Ella T. Grasso Southeastern Regional Vocational Technical School in Groton, Connecticut. His affidavit shows that he earns a gross of $605.43 a week from that source. The defendant also admits that he continues to be a licensed insurance agent and his agency which he operated from his home still has a listing in the local telephone directory. Nevertheless, he claims that there is no current income from that source, although the Schedule C attached to his 1990 1040 federal income tax form indicates that there were earnings of $4,229 from that source during that year.
The defendant also admits to working as a broadcaster/television announcer for which he is paid at the rate of about $75 per performance, but no accounting for that has been shown on the defendant's affidavit even though he admitted to receiving those funds within the last week or two and that it is an ongoing, if sporatic, arrangement. He has two more checks coming from that source which are already earned.
The estate, needs and liabilities of the parties are set forth on their affidavits.
With regard to vocational skills and employability, there is a wide divergence between the parties with the defendant having a flexible and broad professional level employment possibilities and the plaintiff being extremely limited to hourly wage type employment because of her education and experience. The evidence suggests that both CT Page 2594 parties have a capacity to earn more than is presently reflected on their affidavit.
The defendant offered testimony concerning the assets which he brought into the marriage and the use of the funds which were developed by their subsequent sale, and the Court in that connection, will consider those matters as well as the opportunity of each party for the future acquisition of capital assets and income. The plaintiff's primary contribution to the acquisition, preservation or appreciation in value of their respective estates comes as a homemaker while the defendant was the primary source of earnings outside the house.
Giving consideration to the various factors mentioned above, including the testimony, exhibits and arguments of counsel, the Court will enter the orders set forth below.
Custody of the minor children is awarded to the plaintiff mother with the defendant father to have rights of reasonable visitation with the two minor children as follows:
 1. Alternating weekends, from Friday at 5:00 p.m. to Sunday at 7:00 p.m.
 2. Each Tuesday and Thursday, from 4:00 to 8:00 p.m.
 3. Alternate or shared time on major holidays, as mutually agreed upon with plaintiff.
 4. One full school vacation each school year, subject to thirty-day prior written notice to plaintiff.
 5. Four weeks each summer, either consecutive or non-consecutive, subject to written notice to plaintiff by June 1st of each year.
 6. Visitation at other times as mutually agreed upon with plaintiff.
 7. Should defendant not be able to keep a pre-scheduled visit with the children, he should notify plaintiff person to person or by telephone not less than three hours prior to the scheduled CT Page 2595 visitation. Notification through the children is not satisfactory.
 8. The defendant shall be responsible for all transportation related to
 9. In the event that at any time the defendant's visitation with one or the other of his children falls at a time when that child is scheduled to participate in any regularly scheduled school or sporting activity (which it would be customary for the child to attend) the defendant's visitation on that occasion shall be the right to attend said function, and if necessary, the defendant shall provide the child's transportation to said function.
Pursuant to the child support guidelines, the defendant is ordered to pay to the plaintiff the sum of $216 per week ($108 per child) for the support of the minor children of the marriage and shall maintain the existing medical insurance coverage or its equivalent for the children. The plaintiff and the defendant shall be responsible to share equally any uncovered medical and dental expenses for the minor children. The provisions of Section 46b-84(c) of the General Statutes shall apply. The defendant shall be entitled to the state and federal income tax exemptions for both of said children.
The defendant shall maintain the plaintiff on his existing medical insurance as available through his place of employment for a period of three years at his expense provided that such coverage may be terminated at an earlier date should the plaintiff remarry.
The defendant is ordered to pay alimony to the plaintiff in the amount of $1.00 per year.
The Court orders the title to the real property owned jointly by the parties and known as 28 Quailcrest Road, East Lyme, Connecticut, to be hereby transferred from the defendant to the plaintiff, it being the intention of the Court to pass title to the property without any act by the defendant (as authorized by Section 46b-81 of the General Statutes), subject to the obligation of the plaintiff to pay and hold the defendant harmless from the existing mortgage on the property and any real property taxes, insurance, utility or other household expenses arising from the date of this judgment and subject further to the plaintiff providing the CT Page 2596 defendant with a promissory note in the amount of $30,000 without interest, which note shall be payable upon the happening of the first of the following events: the youngest of the children of the marriage of the parties reaching the age of 18 years; the death of the plaintiff; ninety days after the date when the plaintiff no longer uses the premises as her primary residence. Said note shall be secured by a mortgage on the premises, which mortgage shall be subordinated to the rights and liens of any first mortgage on the property not to exceed $100,000 in amount.
The plaintiff shall convey to the defendant any interest which she may have in any ownership, income, royalties, dividends or profits from the baby bottle Handi-Nurser sales, inventions, commissions or patent; and shall sign such documentation as shall be required to accomplish that purpose.
Neither party shall have any rights with regard to the pension or retirement benefits of the other.
The plaintiff shall have no claim with regard to the Boston Red Sox tickets normally subscribed by the defendant.
With regard to motor vehicles, the defendant shall transfer title to the 1983 Mercedes automobile to the plaintiff free and clear of all encumbrances, obligations or charges, and thereafter, the plaintiff shall hold the defendant harmless from any expenses incurred in connection with the same including but not limited to property taxes accruing thereafter and insurance, registration fees, maintenance and costs of operation.
With regard to personal property, the plaintiff is ordered to return to the defendant for his personal use and ownership the Apple GSII computer, any business furniture used in connection with the insurance business operated from the residence of the parties including desks, chairs, file cabinets and the like, all business files from prior business activities conducted on the premises.
The plaintiff shall convey to the defendant any interest which she has in the 1983 Mazda RX7 automobile and the defendant shall hold the plaintiff harmless from any claims and expenses relating to the same including taxes, insurance, maintenance and the operation thereof.
Each party shall be responsible for their own legal expenses. CT Page 2597
With regard to the debts of the parties, the Court orders that each party shall be responsible for the debts shown on their respective affidavits, but this order shall not be deemed to affect the underlying liability of the parties to the creditor.
Each party is ordered to keep the other informed of their address and telephone number in writing and to deliver to the other prior to April 15th of the following year a copy of their federal income tax return for each and every year beginning with 1991 which shall be delivered by registered or certified mail return receipt requested. The plaintiff shall provide the defendant with ninety days advanced written notice of her intention to move the residence of the children out of the state.
LEUBA, JUDGE